# In the United States Court of Federal Claims

No. 07-739 T

(E-Filed: October 29, 2008)

| | |
|---|---|
| INTERSPORT FASHIONS WEST, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) | Motion to Dismiss for Lack of Subject Matter Jurisdiction; Validity of Tax Assessment; Full Payment Rule; 26 U.S.C. § 6203; 26 C.F.R. § 301.6203-1; RCFC 12(b)(1) |

Donald Rightnour, McLean, VA, for plaintiff.

Jacob E. Christensen, with whom were Nathan J. Hochman, Assistant Attorney General, David Gustafson, Chief, and Steven I. Frahm, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant.

OPINION AND ORDER

HEWITT, Judge

Before the court are defendant's Motion of the United States to Dismiss in Part (defendant's Motion or Def.'s Mot.), plaintiff's Response to Motion of the United States to Dismiss in Part (plaintiff's Response or Pl.'s Resp.), plaintiff's Memorandum of the Plaintiff in Support of its Motion to Deny United States Motion (plaintiff's Memorandum or Pl.'s Mem.), and defendant's Reply of the United States in Support of its Motion to Dismiss in Part (defendant's Reply or Def.'s Reply).

For the following reasons, defendant's Motion is GRANTED.

I.    Background

    A.    Procedural History

Plaintiff filed a complaint with this court on October 22, 2007, requesting "a judgment against the United States in the amount of $977,346, plus applicable interest, plus other and further relief as the [c]ourt deems just and proper."  Complaint (plaintiff's Complaint or Compl.), filed Oct. 22, 2007 at 2.  The amount of $977,346 is comprised of plaintiff's requested refund of corporate income tax in the amounts of $393,992 "for fiscal year September 30, 2001" (2001 Tax Period), Compl. 1, and $583,354 "for fiscal year September 30, 2002," id.  In defendant's Motion, defendant moves to dismiss plaintiff's Complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC) only "with respect to plaintiff's refund claim for the [2001 Tax Period]."  Def.'s Mot. 1.

    B.    The Parties' Positions

Defendant argues that the court lacks subject matter jurisdiction over plaintiff's complaint with respect to plaintiff's refund claims for the 2001 Tax Period because plaintiff "failed to pay the full amount of tax assessed with respect to the [2001 Tax Period]."  Def.'s Mot. 3.  Plaintiff "does not dispute that full tax assessed must be paid to file a refund suit in the [United States] Court of Federal Claims."  Pl.'s Mem. 2.  Instead, plaintiff argues that defendant's Motion should be denied because (1) "the United States has not established that a valid assessment of tax is outstanding for the [2001 Tax Period]," and (2) "the Internal Revenue Service [(IRS)] has ignored all requests made by . . . [p]laintiff beginning in January 2006 to prove validity of the purported tax liability."  Pl.'s Resp. 1.

II.    Standard of Review

RCFC 12(b)(1) governs the dismissal of claims for lack of subject matter jurisdiction.  RCFC 12(b)(1).  In deciding a motion to dismiss pursuant to RCFC 12(b)(1), "the court [is] obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor."  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, the burden of proof of establishing jurisdiction is borne by the plaintiff.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Russell v. United States, 78 Fed. Cl. 281, 285 (2007).  If the defendant challenges jurisdictional facts, the plaintiff must support them with "competent proof."  Id.  The plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper.  Reynolds v. Army & Air Force Exch. Serv. (Reynolds), 846 F.2d 746, 748 (Fed.

Cir. 1988).  Jurisdiction is a threshold matter and a case can proceed no further if the court lacks jurisdiction to hear it.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  If the motion to dismiss for lack of subject matter jurisdiction disputes the truth of the jurisdictional facts alleged in the complaint, a court may consider other relevant evidence to resolve the factual dispute.  Moyer v. United States (Moyer), 190 F.3d 1314, 1318 (Fed. Cir. 1999) (citing Reynolds, 846 F.2d at 747).

III.    Discussion

     A.    Jurisdiction of the Court of Federal Claims

The United States Court of Federal Claims (Court of Federal Claims), like all federal courts, is a court of limited jurisdiction.  See United States v. King, 395 U.S. 1, 3 (1969).  The Tucker Act is the primary statute establishing the jurisdiction of the court.  28 U.S.C. § 1491(a)(1) (2006).  In relevant part, the statute provides that this court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States."  Id.

However, plaintiff must establish more than the mere existence of a statute or constitutional provision to bring himself within the jurisdiction of this court.  The Tucker Act provides the waiver of sovereign immunity necessary to sue the United States for money damages, but the plaintiff must establish an independent substantive right to money damages from the United States, that is, a money-mandating source within a contract, regulation, statute, or constitutional provision itself, in order for the case to proceed.  See United States v. Testan, 424 U.S. 392, 398 (1976).  As stated by the United States Court of Appeals for the Federal Circuit (Federal Circuit), the alleged source of the substantive right to money damages must "be reasonably amenable to the reading that it mandates a right of recovery in damages.  While the premise to a Tucker Act claim will not be 'lightly inferred,' . . . a fair inference will do."  Fisher v. United States (Fisher), 402 F.3d 1167, 1174 (Fed. Cir. 2005) (en banc) (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)) (emphases and omission in original).

The Federal Circuit recently clarified that in Fisher it considered three grounds on which the government "might file a motion to dismiss in a Tucker Act case:  (1)  lack of subject matter jurisdiction due to the lack of a money-mandating source; (2)  failure to state a claim upon which relief can be granted due to lack of a money-mandating source; and (3)  failure to state a claim upon which relief can be granted because the plaintiff is ultimately not entitled to recover money damages under the statute."  Greenlee County v. United States, 487 F.3d 871, 876 (Fed. Cir. 2007) (citing Fisher, 402 F.3d at 1172-73).

3

The Federal Circuit reiterated that this court is to resolve motions to dismiss under grounds one and two "by a 'single step' at the outset of the case and 'the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action." Id. (quoting Fisher, 402 F.3d at 1172-73). Therefore, if the contract, regulation, statute, or constitutional provision relied on by plaintiff as the basis of a claim is not reasonably amenable to being interpreted to constitute a money-mandating source, this court must dismiss the claim due to the lack of subject matter jurisdiction.

Congress has "provided the necessary consent," Shore v. United States (Shore), 9 F.3d 1524, 1525 (Fed. Cir. 1993), to waive sovereign immunity both generally in the Tucker Act, and specifically with respect to tax refund suits, in 28 U.S.C. § 1346(a)(1). 28 U.S.C. § 1346(a)(1) (2006); 28 U.S.C. § 1491(a)(1); Shore, 9 F.3d at 1525. Section 1346(a)(1) of title 28 of the U.S. Code establishes this court's jurisdiction over suits for the refund of taxes concurrent with the United States district courts. 28 U.S.C. § 1346(a)(1); Daniels v. United States (Daniels), 77 Fed. Cl. 251, 254 (2007); see also Usibelli Coal Mine v. United States, 54 Fed. Cl. 373, 375 n.6 (2002) (discussing this court's jurisdiction over tax refund suits derived from both the Tucker Act and 28 U.S.C. § 1346(a)(1)). However, the Supreme Court has limited the jurisdiction of this court (and the district courts) in tax refund suits to those claims in which the taxpayer has paid fully all tax assessed for the tax year at issue prior to the initiation of the claim (full payment rule). Flora v. United States (Flora), 362 U.S. 145, 155 (1960), aff'g 357 U.S. 63 (1958). The Federal Circuit has held that the full payment rule is applicable to tax refund claims brought pursuant to the Tucker Act as well as claims initiated under 28 U.S.C. § 1346(a)(1). Shore, 9 F.3d at 1526 (citing Tonasket v. United States, 218 Ct. Cl. 709, 711-12, 590 F.2d 343 (table) (1978) and Katz v. United States, 22 Cl. Ct. 714, 714-15 (1991)). The full payment rule established by the Supreme Court in Flora therefore means that if "the principal tax deficiency has not been paid in full, such tax refund claims are dismissed . . . ." Shore, 9 F.3d at 1526.

      B.     The Court Lacks Jurisdiction Over Plaintiff's Claim for the 2001 Tax Period

The court lacks jurisdiction over plaintiff's tax refund suit with respect to the 2001 Tax Period for two reasons. First, the assessment is presumptively correct and plaintiff has not rebutted the assessment's presumptive validity. Second, plaintiff's failure to pay the full amount of its tax liability prior to initiating this action precludes jurisdiction over its refund suit.

1.      Procedural Validity and Timeliness of the Assessment

Plaintiff argues that the "inconsistency in the transcripts [provided to plaintiff by the IRS]," Pl.'s Mem. 2, coupled with the fact that the IRS "never provided an explanation as to why their records were inconsistent," id. at 1, together prove that defendant "has not established that a valid assessment of tax is outstanding for the [2001 Tax Period]," Pl.'s Resp. 1.  However, based on the evidence presented, valid assessments were made against plaintiff on December 29, 2005 and plaintiff has offered no evidence to rebut the presumptive validity of the assessments.

a.      Valid Assessments Were Timely Made Against Plaintiff on December 29, 2005

A tax "'[a]ssessment' refers to a prescribed procedure for officially recording the amount of a taxpayer's administratively determined tax liability." Dallin ex rel. Estate of Young v. United States (Young), 62 Fed. Cl. 589, 592 (2004).  Tax assessment procedures are governed by 26 U.S.C. § 6203 and its implementing Treasury Regulation 26 C.F.R. § 301.6203-1.  See Gentry v. United States (Gentry), 962 F.2d 555, 557-58 (6th Cir. 1992) (analyzing propriety of tax assessment under procedures set forth in 26 U.S.C. § 6203 and Treasury Regulations); Young, 62 Fed. Cl. at 599 (same); Teets v. United States (Teets), 29 Fed. Cl. 697, 703 (1993) ("The proper method for assessing taxpayers is treated in 26 U.S.C. § 6203 and its corresponding Treasury Regulation, § 301.6203-1 . . . .").  Under 26 U.S.C. § 6203, "[t]he assessment shall be made by recording the liability of the taxpayer in the office of the Secretary [of the Treasury] in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203 (2006).  The pertinent part of the regulation provides the manner in which the assessment shall be made:

> The assessment shall be made by an assessment officer signing the summary record of assessment.  The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment. . . .  The date of the assessment is the date the summary record is signed by an assessment officer.  If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

26 C.F.R. § 301.6203-1.  "[T]he IRS must comply with the regulations governing the assessment process.  The purpose of the regulations is to ensure both the efficiency and

5

the accuracy of the assessment process." March v. IRS, (March), 335 F.3d 1186, 1188 (10th Cir. 2003).

Plaintiff asserts that the inconsistency in the transcripts provided to plaintiff by the IRS pursuant to 26 C.F.R. § 301.6203-1, casts doubt on the timeliness of the assessment for the 2001 Tax Period, and therefore casts doubt also on the application of the full payment rule with respect to the 2001 Tax Period. See Pl.'s Mem. 2-3. Defendant maintains that the assessment was correctly and timely made pursuant to statute and regulation, and plaintiff's failure to pay the outstanding tax assessment requires dismissal of plaintiff's claim for the 2001 Tax Period. Def.'s Mot. 3-5. When the truth of a jurisdictional fact is disputed, other relevant evidence in addition to the pleadings is examined by the court to resolve the factual dispute. Moyer, 190 F.3d at 1318 (citing Reynolds, 846 F.2d at 747).

With its motion to dismiss, defendant submitted a Form 4340, Certificate of Assessments, Payments, and other Specified Matters for Intersport Fashions West, Inc. (Certificate) dated October 30, 2007, showing an outstanding balance against plaintiff for the 2001 Tax Period in the amount of $118,634.05 inclusive of interest and penalties. Def.'s Mot. Exhibit (Ex.) 1 (Certificate) 4. Defendant also filed the Declaration of Sandy Mikkelsen (Mikkelsen Declaration), an employee of the IRS, serving as "the Lead Officer of the Revenue Accounting Team in the Ogden Service Center located in Ogden, Utah." Def.'s Reply Appendix (App.) B (Mikkelsen Declaration) ¶ 1. Attached to the Mikkelsen Declaration is RACS Report 006, Summary Record of Assessments (Summary Record), signed by an assessment officer on December 29, 2005. Def.'s Reply App. B (Summary Record) 3.

"It is well recognized that a Certificate [of Assessments and Payments] constitutes proof that a tax assessment has been made." Estate of Akin v. United States, 31 Fed. Cl. 89, 96 (1994) (citing Rocovich v. United States (Rocovich), 933 F.2d 991, 994 (Fed. Cir. 1991) ("A Certificate of Assessments and Payments is routinely used to prove that a tax assessment has in fact been made.")). A Certificate of Assessments and Payments, also referred to as Form 4340, is "presumptive proof of a valid assessment." United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989) (citing United States v. Dixon, 672 F. Supp. 503, 506 (M.D. Ala. 1987), aff'd per curiam, 849 F.2d 1478 (11th Cir. 1988); see also Gentry, 962 F.2d at 557 ("Certificates of [A]ssessments and [P]ayments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made."); Young, 62 Fed. Cl. at 600 ("It is well established that a certified copy of the taxpayer's Form 4340 triggers the presumption of correctness in favor of the government . . . ."). "Therefore, once the [Certificate of Assessments and Payments] is introduced, the taxpayer bears the

burden of showing that the information presented is incorrect." Young, 62 Fed. Cl. at 601; Adams v. United States, 175 Ct. Cl. 288, 301-02, 358 F.2d 986, 994 (Ct. Cl. 1966) ("Proof of the assessment establishes a prima facie case and shifts the burden of going forward to the taxpayer."). However, "one must read the official documents [such as a Certificate of Payments and Assessments] to see what they say. It is insufficient that they merely exist." Jones v. United States (Jones), 60 F.3d 584, 590 (9th Cir. 1995).

In order to satisfy the requirements of 26 C.F.R. § 301.6203-1, "[t]he summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." 26 C.F.R. § 301.6203-1. The Summary Record and Certificate provided by defendant satisfy the requirements of 26 C.F.R. § 301.6203-1. An RACS Report 006 is a "summary record of assessment" under 26 C.F.R. § 301.6203-1. March, 335 F.3d at 1188. A Certificate of Assessments and Payments, also referred to as a Form 4340, is a "supporting record" under 26 C.F.R. § 301.6203-1. See id. "[P]roduction of a Form 4340 creates a presumption that a [s]ummary [r]ecord of [a]ssessment . . . on . . . RACS Report 006 . . . was validly executed and certified." Id. at 1189. The Certificate provided by defendant identifies the taxpayer by name as "Intersport Fashions West Inc" and also provides plaintiff's Employer Identification Number. Def.'s Mot. Ex. 1 (Certificate) 1. The Certificate contains a column labeled "explanation of transaction" under which the Certificate identifies the character of the liabilities assessed. Id. at 1-3. The taxable period appears on the Certificate as "Sept 2001." Id. at 1. Finally, the amounts of the assessments for the 2001 Tax Period appear under a column labeled "assessment." Id. at 1-3. The summary of record assessment, RACS Report 006, together with the supporting record, Form 4340, satisfy the requirements of 26 C.F.R. § 301.6203-1.

In addition, pursuant to 26 C.F.R. § 301.6203-1, "the assessment shall be made by an assessment officer signing the summary record of assessment. . . . The date of the assessment is the date the summary record is signed by an assessment officer." 26 C.F.R. § 301.6203-1. The signature requirement "serve[s] multiple purposes." March, 335 F.3d at 1188. The signature requirement "ensures that an assessment officer reviews the assessment before it is sent to the taxpayer, and the placing of the officer's signature establishes an effective date of the assessment that is relevant for certain timing requirements." Id. The "timing requirement[]," id., for which an "effective date of the assessment," id., is relevant in this case is the statute of limitations.

The statute of limitations for defendant to assess tax against plaintiff for the 2001 Tax Period expired December 31, 2005. Pl.'s Resp. Ex. 1 (Affidavit of John L. Flynn) ¶ 1; Def.'s Mot. 4; Def.'s Mot. Ex. 1 (Certificate) 2. The Summary Record contains the assessments made against plaintiff, and was signed and dated on December 29, 2005.

Therefore, defendant has complied with the requirements of 26 C.F.R. § 301.6203-1, and has established that the assessments against plaintiff were timely made. The Summary Record submitted by defendant contained assessments made against plaintiff. Def.'s Reply App. B (Mikkelsen Declaration) ¶ 4 (explaining that the first unique Document Locator Number listed on page 3 of the Summary Record refers to assessments made against plaintiff on December 29, 2005); see also id. App. B (Summary Record) 3 (listing the unique Document Locator Numbers that correspond to the requests for assessment processed on the date of the Summary Record, the first of which corresponds to assessments made against plaintiff); id. at 4 (stating that "the RACS Report 006 itself . . . establish[es] conclusively that plaintiff's assessments are included in the RACS 006 summary report for December 29, 2005"); Def.'s Mot. Ex. 1 (Certificate) 2 (listing the unique Document Locator Number that corresponds to the assessments made against plaintiff on December 29, 2005). The Summary Record was signed by an assessment officer and dated December 29, 2005. Def.'s Reply App. B (Summary Record) 2. Because the Summary Record contains the assessments made against plaintiff, and was signed and dated on December 29, 2005, defendant has complied with the requirements of 26 C.F.R. § 301.6203-1. The assessments against plaintiff were timely made. Cf. Brewer v. United States, 764 F. Supp. 309, 315-16 (S.D.N.Y. 1991) (finding that the validity of liens assessed against plaintiff were "throw[n] into question" when there was "no indication in the record . . . that the [summary record of assessment] . . . was completed and signed by the assessment officer as required by 26 C.F.R. § 301.6203-1"); Jones v. United States, 60 F.3d 584, 590 (9th Cir. 1995) (finding that presumption in favor of IRS was rebutted as to timeliness of assessment where the summary record of assessment did not identify any party as having been assessed, and where none of the amounts claimed against the plaintiff matched the amounts for taxes or penalties on the summary record of assessment).

      b.     Plaintiff's Evidence Does Not Rebut the Presumptive Validity of the Timely Assessments

Plaintiff argues that the "inconsistency in the transcripts [provided to plaintiff by the IRS]," Pl.'s Mem. 2, coupled with the fact that "the IRS never provided an explanation as to why their records were inconsistent," id. at 1, together prove that defendant "has not established that a valid assessment of tax is outstanding for the [2001 Tax Period]," Pl.'s Resp. 1. Plaintiff's arguments do not rebut the presumption in favor of the IRS as to the validity or timeliness of the assessment for three reasons. First, the documents provided to plaintiff comported with the requirements of 26 C.F.R. § 301.6203-1. Second, plaintiff cites no authority to support its position. See Pl.'s Resp. passim; Pl.'s Mem. passim. Third, prior cases with factual circumstances closely analogous to the circumstances in this case do not support plaintiff's argument.

First, the documents provided by defendant to plaintiff comported with regulatory requirements.  Pursuant to 26 C.F.R. § 301.6203-1:

> If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

26 C.F.R. § 301.6203-1.  In response to plaintiff's requests, and in accordance with the regulation, defendant provided plaintiff with two transcripts.  Pl.'s Mem. 1; Def.'s Reply App. B (Mikkelsen Declaration) ¶ 5.  The first transcript, dated April 13, 2006, does not reflect the assessments made by defendant on December 29, 2005.  Pl.'s Mem. 2; see id. Ex. 3 (April 2006 Transcript) passim; Def.'s Reply App. B (Mikkelsen Declaration) ¶ 5.  The second transcript, dated June 22, 2006, includes the assessments made by defendant on December 29, 2005.  Pl.'s Mem. 2; id. Ex. 5 (June 2006 Transcript) 3.  The June 2006 Transcript complies with the requirements of the regulation:  It identifies the taxpayer by name as "Intersport Fashions West Inc" and also provides plaintiff's Taxpayer Identification Number.  Pl.'s Mem. Ex. 5 (June 2006 Transcript) 2.  It contains a column labeled "date" under which the date of each particular assessment appears.  Id. at 2-3.  It also contains a column labeled "explanation" under which it identifies the character of the liabilities assessed.  Id.  The taxable period appears on the transcript as "Sept 2001."  Id. at 2.  Finally, the amounts of the assessments for the 2001 Tax Period appear under a column labeled "money amount."  Id. at 2-3.  The June 2006 Transcript provided by defendant to plaintiff satisfies the requirements of 26 C.F.R. § 301.6203-1.

Second, plaintiff's contention that the assessments made against plaintiff are invalid due to the inadequacy of the documents provided to plaintiff by defendant is unsupported.  See Pl.'s Resp. passim; Pl.'s Mem. passim.  Plaintiff cites no legal authority, in the Treasury Regulations or otherwise, to suggest that the absence of the December 29, 2005 assessment on the first certificate provided by defendant invalidates the subsequent certificate on which it did appear.  Plaintiff also fails to cite any authority to suggest that defendant was obligated to provide an explanation to plaintiff regarding the inconsistencies on the transcripts plaintiff received.

Third, in prior cases with factual circumstances closely analogous to the circumstances in this case, plaintiffs have been unsuccessful in claiming that assessments against them were erroneous due to inadequacies of documents provided to them by the government.  In Howell v. United States (Howell), the documents provided to plaintiff did not satisfy the regulatory requirements for supporting records because they did not contain the character of the liability assessed or the taxable period.  Howell, 164 F.3d

9

523, 525 (10th Cir. 1998).  In discussing the government's failure to comply with the requirement to provide supporting records to a taxpayer, the court noted, "no section of the Internal Revenue Code or the regulations imposes a sanction for the IRS's failure to comply with this provision."  Id. at 526.  The court went on to hold that "any failure by the IRS to comply with its duty to provide the information set out in § 301.6203-1 did not render the assessment . . . invalid."  Id.  In Howell, defendant's documents did not satisfy two of the regulatory requirements.  Id. at 525.  In this case, although the December 29, 2005 assessments did not appear on the April 2006 transcript, defendant's June 2006 Transcript satisfied all of the regulatory requirements (as discussed above).  In Howell, the inadequacy of the documents was clearly more glaring than any inadequacy in this case but was still not found sufficient to render the assessment in that case invalid.

      In Young, the Court of Federal Claims stated that "even a notice [to plaintiff] that contains technical defects is valid as long as the taxpayer has not been prejudiced or misled by the error and is afforded a meaningful opportunity to contest the assessment."  Young, 62 Fed. Cl. at 605.  In this case, while the April 2006 Transcript did not contain the December 29, 2005 assessments, plaintiff could not have been misled or prejudiced because it received notice of the assessments when it received the June 2006 Transcript.  See Pl.'s Resp. Ex. 1 (Affidavit of John L. Flynn) ¶ 9 (stating that plaintiff received the June 2006 Transcript which "showed entries . . . dated December 29, 2005").  Moreover, plaintiff must be viewed as having had actual notice of the assessments for the 2001 Tax Period as early as August 29, 2005, the date on which plaintiff entered into an agreement with defendant with respect to the assessments for the 2001 Tax Period "at the close of an IRS audit."  Def.'s Reply 1, Ex. 1 (Agreement) 2.  Whether the plaintiff had actual notice of the additional assessments for the 2001 Tax Period as of August 29, 2005 or at the time it received the June 2006 Transcript, plaintiff has not persuasively argued that it was deprived of a "meaningful opportunity to contest the assessment."[1]  See Young, 62 Fed.

---

[1] The court notes that plaintiff also argues that "[d]ue to the delay of the IRS in responding [to plaintiff's requests made after receiving the transcript dated June 22, 2006 (June 2006 Transcript)], if there were, in fact, tax owed, and the [p]laintiff paid, it could not refile a claim due to expiration of the statute of limitations to file."  Plaintiff's Memorandum of the Plaintiff in Support of its Motion to Deny United States Motion (plaintiff's Memorandum or Pl.'s Mem.) 2.  Plaintiff's argument contending prejudice to plaintiff due to the delay of the Internal Revenue Service (IRS) in responding to plaintiff is unpersuasive for two reasons.  First, as discussed in Part III.B.1.b of this opinion, the June 2006 Transcript comported with regulatory requirements under 26 C.F.R. § 301.6203-1 and was sufficient to provide plaintiff with notice that outstanding tax assessments had been timely made against plaintiff.  See supra Part III.B.1.b.  Therefore, plaintiff was notified that "there were, in fact, tax owed," Pl.'s Mem. 2, at the time
(continued...)

Cl. at 605; see also Compl. ¶¶ 1-6 (describing the plaintiff's filing of protests with the IRS as to the 2001 Tax Period).

In United States v. White (White), plaintiff pointed to several errors in defendant's Form 4340, none of which were sufficient to prove that the assessments in issue were erroneous. White, 466 F.3d 1241, 1249 (11th Cir. 2006). In White, the Form 4340 inaccurately "show[ed] a balance of $0." Id. The court explained that "the reason for the erroneous balance was an error in the computer program that had completed the form." Id. More specifically, "the computer program assumed that the statute of limitations had expired because it did not recognize that [the running of the statute of limitations had been delayed]." Id. In this case, while the reason that the December 29, 2005 assessments did not appear on the April 2006 Transcript was not due to an error, it was due to the specific technicalities in defendant's process for posting assessments. See Def.'s Reply App. B (Mikkelsen Declaration) ¶ 5. The Mikkelsen Declaration explains that:

> The assessments made on December 29, 2005, were not reflected in the [April 2006 Transcript] because they had not posted to the master file account. There are numerous reasons for an assessment not to post to the master file account. Until the [IRS] has resolved all unpostable situations related to an assessment, the assessment will not appear on the master file account and, in turn, will not appear on the transcript of the account. Once the [IRS] has resolved all the unpostable situations . . . the assessment appears on the account.

---

[1](...continued)
plaintiff filed this complaint. Second, the court notes that the expiration of the statute of limitations to which plaintiff refers was a direct consequence of plaintiff's voluntary decision in this case. Because plaintiff filed a waiver of notice of disallowance, the statute of limitations in this case is governed by 26 U.S.C. § 6532(a)(3) and the two year statute of limitations began to run on the date on which plaintiff filed the waiver. 26 U.S.C. § 6532(a)(3) (2006). Plaintiff filed the waiver on November 7, 2005. Complaint (plaintiff's Complaint or Compl.), filed Oct. 22, 2007, ¶ 3; Answer (defendant's Answer or Answer), filed Feb. 19, 2008, ¶ 3. Therefore, plaintiff was required to file this action on or before November 7, 2007 in order not to be time barred. See 26 U.S.C. § 6532(a)(3). The court notes that if plaintiff had not filed a waiver of notice of disallowance, the statute of limitations would not have begun until the "date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance," 26 U.S.C. § 6532(a)(1), which in this case would have been May 26, 2006. Compl. ¶ 4; Answer ¶ 4. In short, the earlier expiration date of the statute of limitations in this case is due to plaintiff's decision to waive a notice of disallowance. Plaintiff's own decision undercuts plaintiff's argument of prejudice.

11

Id. In White, the court described the zero balance as "little more than a typographical error" and the assessments were upheld as valid. White, 466 F.3d at 1249. An analogous argument could be made regarding the inconsistencies in the transcripts in this case, as they were similarly due to the mechanics of defendant's process of posting assessments. Similarly, in IRS v. Koff (Koff), the taxpayer opposed the validity of the government's tax assessments against her because the computer printout which she received from the government did not reflect any tax liability. Koff, No. S-00-CV-1954, 2002 WL 1004744, at *4 (E.D. Cal. Mar. 18, 2002). In Koff, as in this case, defendant had submitted a Certificate of Assessments and Payments that established the validity of the assessments at issue. See id. The court in Koff accepted the government's argument that "to the extent the computer generated form [given to plaintiff] reflecting zero balances may be considered, . . . it merely reflects a clerical error resulting from the IRS computer not being coded to reflect the timely filing of the complaint in this action." Id. In this case, the absence of the December 29, 2005 assessments from the April 2006 Transcript was due solely to the administrative delay in the assessments being posted to the plaintiff's master file account. See Def.'s Reply App. B (Mikkelsen Declaration) ¶ 5.

Plaintiff does not provide, and the court is not aware of, any legal authority that supports plaintiff's claim that the inconsistency in the transcripts sent to plaintiff rebut the presumption that the assessments made by defendant for the 2001 Tax Period were both timely and valid. Plaintiff's arguments as to the inadequacy of the documents provided to it by the IRS are unpersuasive because: (a) the June 2006 Transcript comported with regulatory requirements; (b) plaintiff offers no legal authority to substantiate its arguments; and (c) case law does not support plaintiff's argument that the inconsistencies in the transcripts are sufficient rebut the presumption of validity. Therefore, the court finds that plaintiff has failed to present sufficient evidence to rebut the presumptive validity of the assessments, and concludes that a procedurally valid assessment was made by defendant against plaintiff.

    2.    Application of the Flora Full Payment Rule Precludes Jurisdiction Over Plaintiff's Claims for the 2001 Tax Period

Because the Summary Record and Certificate clearly identify that assessments were made against plaintiff on December 29, 2005, and plaintiff has offered no evidence sufficient to rebut the presumptive validity of the assessments, plaintiff's refund action for the 2001 Tax Period is governed by the full payment rule. See Flora, 362 U.S. at 177; Shore, 9 F.3d at 1526. The full payment rule requires this court to dismiss any claim for a refund for a tax year with respect to which the assessed taxes have not been fully paid. Shore, 9 F.3d at 1526. Because plaintiff has outstanding tax liability for the 2001 Tax

Id. In White, the court described the zero balance as "little more than a typographical error" and the assessments were upheld as valid. White, 466 F.3d at 1249. An analogous argument could be made regarding the inconsistencies in the transcripts in this case, as they were similarly due to the mechanics of defendant's process of posting assessments. Similarly, in IRS v. Koff (Koff), the taxpayer opposed the validity of the government's tax assessments against her because the computer printout which she received from the government did not reflect any tax liability. Koff, No. S-00-CV-1954, 2002 WL 1004744, at *4 (E.D. Cal. Mar. 18, 2002). In Koff, as in this case, defendant had submitted a Certificate of Assessments and Payments that established the validity of the assessments at issue. See id. The court in Koff accepted the government's argument that "to the extent the computer generated form [given to plaintiff] reflecting zero balances may be considered, . . . it merely reflects a clerical error resulting from the IRS computer not being coded to reflect the timely filing of the complaint in this action." Id. In this case, the absence of the December 29, 2005 assessments from the April 2006 Transcript was due solely to the administrative delay in the assessments being posted to the plaintiff's master file account. See Def.'s Reply App. B (Mikkelsen Declaration) ¶ 5.

Plaintiff does not provide, and the court is not aware of, any legal authority that supports plaintiff's claim that the inconsistency in the transcripts sent to plaintiff rebut the presumption that the assessments made by defendant for the 2001 Tax Period were both timely and valid. Plaintiff's arguments as to the inadequacy of the documents provided to it by the IRS are unpersuasive because: (a) the June 2006 Transcript comported with regulatory requirements; (b) plaintiff offers no legal authority to substantiate its arguments; and (c) case law does not support plaintiff's argument that the inconsistencies in the transcripts are sufficient rebut the presumption of validity. Therefore, the court finds that plaintiff has failed to present sufficient evidence to rebut the presumptive validity of the assessments, and concludes that a procedurally valid assessment was made by defendant against plaintiff.

    2.    Application of the Flora Full Payment Rule Precludes Jurisdiction Over Plaintiff's Claims for the 2001 Tax Period

Because the Summary Record and Certificate clearly identify that assessments were made against plaintiff on December 29, 2005, and plaintiff has offered no evidence sufficient to rebut the presumptive validity of the assessments, plaintiff's refund action for the 2001 Tax Period is governed by the full payment rule. See Flora, 362 U.S. at 177; Shore, 9 F.3d at 1526. The full payment rule requires this court to dismiss any claim for a refund for a tax year with respect to which the assessed taxes have not been fully paid. Shore, 9 F.3d at 1526. Because plaintiff has outstanding tax liability for the 2001 Tax

Period, the court must dismiss the case as to plaintiff's claims for the 2001 Tax Period. See id.

In Flora, the Supreme Court made the prepayment of a tax deficiency a requirement to maintaining a refund action in federal district court. Flora, 362 U.S. at 177. In Shore, the Federal Circuit applied what has become known as the "full payment rule" to claims brought under 28 U.S.C. § 1491(a)(1) in the Court of Federal Claims. Shore, 9 F.3d at 1526.[2] Plaintiff "does not dispute that full tax assessed must be paid to file a refund suit in the [United States] Court of Federal Claims." Pl.'s Mem. 2. Jurisdiction over refund actions in this court is "determined based on the circumstances as they exist at the time plaintiffs file their claim." Shore, F.3d at 1527. Plaintiff filed its Complaint in this action on October 22, 2007. Compl. 1. Defendant has produced unrebutted evidence that plaintiff had outstanding tax liability for the 2001 Tax Period as of October 30, 2007. Def.'s Mot. Ex. 1 (Certificate) 1. Plaintiff also does not dispute that tax assessments against plaintiff were outstanding at the time plaintiff's Complaint was filed. See Pl.'s Mot. passim; Pl.'s Mem. passim.

Plaintiff's only complaint as to the application of the full payment rule appears to be that the rule "effectively require[s] [p]laintiff to have paid tax that may or may not have been valid in order to file a refund claim [in this court]." Pl.'s Mem. 3. Plaintiff's argument regarding the fairness of the jurisdictional system governing tax refund suits has been squarely addressed both by the Supreme Court and by the Court of Federal Claims. In Flora, the Court addressed "the argument that requiring taxpayers to pay the full assessments before bringing suits will subject some of them to great hardship," Flora, 362 U.S. at 175, by stating that "this contention seems to ignore entirely the right of the taxpayer to appeal the deficiency to the Tax Court without paying a cent," id. The Court

---

[2] The court notes that the issue of precisely which assessments plaintiff was required to prepay before bringing an action in this court, raised by Shore v. United States (Shore), is outside the scope of the questions presently at issue in this case because, unlike the plaintiffs in Shore, plaintiff in this case did not make any partial payments towards the outstanding tax principal, or penalties or interest for the tax period at issue before initiating this action. Cf. Shore, 9 F.3d 1524 (Fed. Cir. 1993). In Shore, plaintiffs were assessed tax deficiencies, along with interest and penalties for late payment of the tax. Id. at 1525. The Shore plaintiffs paid the assessed tax but did not pay either the interest or the penalties. Id. The court in Shore held that plaintiffs' refund claim as to the assessed tax was proper because plaintiffs had paid the tax assessment and therefore complied with the full payment rule as to the tax assessed. Id. at 1527. In this case, as in Estate of Akin v. United States (Akin), "because the Certificate [of Assessments and Payments, also referred to as the Form 4340] reflects a deficiency of . . . taxes, excluding interest and penalties, as of the date of the complaint, plaintiff[] ha[s] failed to satisfy the full payment rule. The court therefore lacks jurisdiction." See Akin, 31 Fed. Cl. 89, 96 (1994).

went on to underscore the government's "substantial interest in protecting the public purse, an interest which would be substantially impaired if a taxpayer could sue in a District Court without paying his tax in full." Id.

In Daniels, this court addressed the jurisdictional system governing tax refund suits:

> [T]he jurisdictional provisions . . . provide adequate fora for taxpayers and form 'a system in which there is one tribunal for prepayment litigation and another for post-payment litigation' . . . .  Thus, if a taxpayer is barred from bringing, or does not wish to bring, suit in Tax Court, [28 U.S.C. §] 1346(a)(1) provides an alternative forum for a tax refund suit in either federal district court or the [United States] Court of Federal Claims.

Daniels, 77 Fed. Cl. at 255 (quoting Flora, 362 U.S. at 163).  In this case, as in Daniels, "to secure such [an alternative] forum[,] a taxpayer must pay the full amount of tax assessed regardless of extraordinary circumstances and concomitant hardship."  See id.

Plaintiff has failed to show by a preponderance of the evidence that jurisdiction is proper.  See Reynolds, 846 F.2d at 748.  Because plaintiff has not satisfied the full payment rule, this court lacks jurisdiction over plaintiff's claims with respect to the 2001 Tax Period.

IV.   Conclusion

For the foregoing reasons, the court DISMISSES plaintiff's claim as to the 2001 Tax Period for lack of subject matter jurisdiction.  See RCFC 12(b)(1).

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge